**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| FEDERAL HOUSING FINANCE AGENCY, | ) | |
| On its Own Behalf and as | ) | |
| Conservator of Fannie Mae and Freddie Mac, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| | ) | Civil Action No.: |
| CITY OF CHICAGO, | ) | |
| a municipal corporation, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## VERIFIED COMPLAINT

Plaintiff Federal Housing Finance Agency ("FHFA" or the "Conservator"), on its own

behalf and as Conservator of and on behalf of the Federal National Mortgage Association

("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac") (together

the "Enterprises"), complains as follows against the City of Chicago ("Defendant"):

### STATEMENT OF THE CASE

1.      This case arises because the City of Chicago is interfering unlawfully with

FHFA's federally mandated oversight and exercise of discretion, as Conservator and regulator of

the Enterprises, to preserve and conserve the value of collateral securing the Enterprises' credit

exposures.  The City of Chicago seeks to regulate and supervise the Conservator, Fannie Mae

and Freddie Mac in their capacity as mortgage investors and mortgagees -- that is, as holders of

indebtedness secured by real estate that has *not* been foreclosed upon.[1]  The City of Chicago has enacted an ordinance (the "Ordinance") that imposes a registration and regulatory scheme -- replete with taxes, fines, penalties, and ongoing supervision by the Chicago Department of Buildings -- on the FHFA and the Enterprises in violation of federal law.

2.      The Ordinance requires the Conservator and the Enterprises to file a registration statement with the City of Chicago's Department of Buildings for each "vacant" building with respect to which the Conservator and Enterprises is a mortgagee.  The Ordinance imposes onerous requirements on the Conservator and Enterprises as registrants, including that they must pay an initial registration fee of $500, and renew the registration for successive six-month periods as long as the building remains "vacant."  After registration, and without regard for whether the Conservator and the Enterprises ever foreclose upon a "vacant" property in which they hold a security interest, the Ordinance treats them as property owners for certain purposes. The Ordinance compels the Conservator and Enterprises to maintain a "vacant" building and surrounding property, which they do not own, in accordance with a series of standards set forth in the Ordinance or later as implemented and amended by City regulation.  If the City of Chicago deems the Conservator or Enterprises to be in violation of any provision of the Ordinance, it will fine them up to $1,000.00 per day for each offense.

3.      The Ordinance identically regulates property owners and *mortgagees* with security interests in "vacant" property.  Thus, the Ordinance imposes obligations on the Conservator and the Enterprises as mortgagees with respect to properties that have not been foreclosed upon and to which the Conservator and the Enterprises do not possess title and

---

[1]     The Enterprises buy mortgages in the secondary market from loan originators that are the original mortgagees under the loan instruments.  The Enterprises become mortgagees by succession or assignment or because they have purchased a mortgage.

property rights attendant to such title.  The Ordinance imposes these requirements even though, under Illinois law, the Conservator and the Enterprises do not have the right to possess property prior to foreclosure in the absence of a court order authorizing such possession.  *See* 735 ILCS 5/15-1701(b).  The Ordinance thus purports to impose upon secured commercial creditors, such as the Conservator and the Enterprises, virtually the full panoply of legal and financial responsibilities attendant to real property ownership.  The Ordinance thereby unlawfully regulates the commercial lending activities of the Enterprises, federally chartered and regulated creditors, and their statutory conservator.

4.      The Housing and Economic Recovery Act of 2008 ("HERA") provides that, while acting as Conservator, FHFA is not subject to the supervision or direction of any other agency. 12 U.S.C. § 4617(a)(7).  Upon placing the Enterprises into conservatorships, FHFA succeeded to all the Enterprises' rights with respect to their assets.  12 U.S.C. § 4617(a).  The Ordinance requires the federal Conservator of the federally chartered Enterprises, in circumstances where neither the Enterprises nor the Conservator hold title or any ownership interest in real property parcels upon which a "vacant" building is situated, to bear the expense and burden of complying with the comprehensive supervision and regulation of the Chicago Department of Buildings, and the very real threat of potentially massive financial sanctions for failure to be deemed in full compliance with each and every one of the Department's supervisory dictates with respect to the care and maintenance of vacant structures.  The Ordinance thus subjects the Conservator to the supervision and direction of the Department of Buildings, in violation of federal law.  For this reason, federal law preempts the Ordinance as applied to the Conservator and the Enterprises.

5.      Further, HERA provides that FHFA is to be the exclusive regulator of the Enterprises and grants the Director of FHFA "general regulatory authority."  12 U.S.C. § 4511.

The provisions of the Ordinance that require the Enterprises to register with the City of Chicago and then comply with specific ongoing obligations are a regulatory scheme that subjects the Enterprises to the governance and supervision of the City of Chicago and its Department of Buildings, in violation of federal law.  In addition, the Ordinance incorporates a taxing feature that would unlawfully be applied to servicers of loans on behalf of the Enterprises.  For these reasons, federal law preempts the Ordinance.

6. As applied to the Conservator and the Enterprises, the base registration fee constitutes a tax in violation of each entity's statutory immunity from taxation.  HERA provides that the Conservator "including its franchise, its capital, reserves, and surplus, and its income, shall be exempt from all taxation imposed by any State, county, municipality, or local taxing authority …."  12 U.S.C. § 4617(j)(1), (2).  Furthermore, Congress granted each Enterprise immunity from state and local taxation.  *See* 12 U.S.C. § 1723a(c) (Fannie Mae immunity); § 1452(e) (Freddie Mac immunity).

7. The Ordinance also violates the Conservator's statutory immunity from penalties and fines.  HERA provides that the Conservator, "shall not be liable for any amounts in the nature of penalties or fines, including those arising from the failure of any person to pay any real property, personal property, probate, or recording tax or any recording or filing fees when due." 12 U.S.C. § 4617(j)(1), (4).  In addition to violating the superseding and paramount federal statutes and authorities referenced above, the assessment of penalties and fines against the Conservator and Enterprises would unlawfully compel the Conservator and the Enterprises to submit to the regulatory and supervisory directives of the City of Chicago when the Entities' sole regulator under paramount federal law is the FHFA.

8.     The Ordinance compounds the aforementioned problems by imposing vague, subjective requirements on mortgagees such as the Enterprises and Conservator.  For example, the Ordinance requires mortgagees to assess whether a property is "uninhabited" or occupied on a seasonal basis, and to determine whether "law enforcement officials" have received a report of trespassing or other illegal acts at a property within the last six months.  The Ordinance thus imposes on mortgagees a duty to accurately assess the status of a property, despite the fact that mortgagees will face unknown potential liability if they wrongly post a vacancy notice or undertake repairs or secure a property that is not, in fact, vacant.  Further, rather than immunizing mortgagees for undertaking obligations mandated under the Ordinance, the Ordinance provides only partial and insufficient protections which would expose the Conservator and the Enterprises to claims that they have been "grossly negligent" if they mistakenly treat an inhabited property as vacant.

9.     FHFA, on its own behalf and as the Conservator of Fannie Mae and Freddie Mac, now brings this action for a declaratory judgment and to enjoin enforcement of the Ordinance against the Conservator, the Enterprises, and those acting on their behalf.

## JURISDICTION AND VENUE

10.     Jurisdiction of this Court is founded on 28 U.S.C. § 1345, which gives federal courts original jurisdiction over claims brought by FHFA in its capacity as conservator of Fannie Mae and conservator of Freddie Mac, as well as jurisdiction for actions brought by FHFA in its own behalf.

11.     This court also has jurisdiction pursuant to 28 U.S.C. § 1331 because the claims asserted arise under the laws of the United States.

12.     In addition, this court has jurisdiction under 12 U.S.C. § 1452(f), because the Conservator is bringing this action on behalf of Freddie Mac, and 28 U.S.C. § 1367.

13.     Venue lies in the Northern District of Illinois pursuant to 28 U.S.C. § 1391 because the Defendant resides in the Northern District of Illinois, and a substantial part of the events or omissions giving rise to the claims occurred in this district.

**PARTIES**

14.     The Defendant, City of Chicago, is a municipal corporation organized and existing under the laws of the State of Illinois.

15.     Plaintiff the Federal Housing Finance Agency is a federal agency located at 1700 G Street, NW in Washington, D.C.  FHFA was created on July 30, 2008, pursuant to HERA, Pub L. No. 110-289, 122 Stat. 2654, codified at 12 U.S.C. § 4617 *et seq.*, to oversee the Enterprises and the Federal Home Loan Banks.

16.     On September 6, 2008, the Director of FHFA, authorized by HERA, placed Fannie Mae and Freddie Mac into conservatorships and appointed FHFA as Conservator.  In that capacity, FHFA has the authority to exercise all rights and remedies of Fannie Mae and Freddie Mac, including, but not limited to, the authority to bring suits on behalf of and/or for the benefit of Fannie Mae and Freddie Mac. 12 U.S.C. § 4617(b)(2).

17.     Fannie Mae and Freddie Mac are government-sponsored enterprises chartered by Congress with the mission to provide liquidity, stability and affordability to the United States housing and mortgage markets.  As part of this mission, Fannie Mae and Freddie Mac purchase and securitize or hold and own tens of millions of mortgages.  Together, the Enterprises own more than 250,000 mortgages associated with properties located in the 92 zip codes that comprise the City of Chicago.  Fannie Mae is located at 3900 Wisconsin Avenue, NW in Washington, D.C.  Freddie Mac is located at 8200 Jones Branch Drive in McLean, Virginia.

**THE ORDINANCE**

18.      On July 28, 2011, the Chicago City Council passed an Ordinance that amended Section 13-12-125 of the Municipal Code of Chicago.  The Ordinance imposes new obligations on mortgagees, including the Conservator and the Enterprises, to make them responsible for maintaining vacant buildings, and lots on which these buildings are located, with respect to any property subject to the mortgages they hold.  The Ordinance defines "mortgagee" broadly to include "(A) the holder of an indebtedness or obligee of a non-monetary obligation secured by a mortgage or any person designated or authorized to act on behalf of such holder, (B) any person claiming through a mortgagee as successor, and (C) any person identified as such in a recorded document which has not been released, assigned, or superseded of record."  Chicago, IL, Code § 13-12-126(e)(3) (2011).  For mortgages owned by the Enterprises, the Conservator, the Enterprises, and their servicers all fall within the definition of "mortgagee."  The Ordinance was formally published on November 9, 2011 and became effective November 19, 2011.

19.      The core element of the Ordinance is a registration scheme that prescribes certain standards for maintaining vacant buildings and lots, and imposes financial assessments, including taxes, fines, and penalties, on mortgagees.  The Ordinance requires the Conservator and the Enterprises, as mortgagees of vacant buildings, to file a registration statement for each vacant building with the Department of Buildings thirty days after a property becomes vacant or sixty days after a default on a mortgage, whichever is later.  Chicago, IL, Code § 13-12-126(a)(1) (2011).  The Conservator and the Enterprises must renew the registration for successive six-month periods as long as the building remains vacant and must pay a base registration fee of $500 upon initial registration.  If the City of Chicago determines that the Conservator or the Enterprises have violated any provision of the Ordinance, the Ordinance provides that the Conservator or the Enterprises shall be fined up to $1,000.00 per day for each offense.

20.     Upon registration, the Ordinance imposes additional duties on the Conservator and the Enterprises with respect to vacant properties, including among other things: (a) enclosing and securing the building; and (b) posting a sign with the name and contact information of a person responsible for day-to-day supervision of the building and for receiving service of process.  Chicago, IL, Code § 13-12-126(b)(1), (9).  Further, the Ordinance requires all building openings to be "closed and secured, using secure doors, … commercial-quality steel security panels, … and secured in accordance with the rules and regulations issued by the commissioner of buildings."  *Id.* § 13-12-126(b)(1).

21.     The Ordinance requires mortgagees to determine whether a building is "vacant," placing the burden of determining whether a property is "uninhabited" on mortgagees rather than the City.  As a practical matter, the Conservator and the Enterprises would have only limited ability to assess the occupancy of specific properties, and that effort would inevitably result in incorrect results and potential liability for mistakenly declaring an occupied property vacant.

### FHFA'S STATUTORY AUTHORITY

22.     The financial crisis of 2008, which witnessed the rapid deterioration of the mortgage markets, left the Enterprises in severe financial distress.  Recognizing the vital role the Enterprises play not only in the health and stability of the Nation's housing market but also in the availability of affordable housing, Congress created FHFA and granted it broad powers, including the authority to place the Enterprises in conservatorship or receivership.  12 U.S.C. §§ 4511; 4617(a).

23.     On September 6, 2008, James B. Lockhart, III, then Director of FHFA, placed Fannie Mae and Freddie Mac into conservatorships and appointed FHFA as conservator.  The purpose of conservatorship is "reorganizing, rehabilitating or winding up [the Enterprises'] affairs."  *Id.* § 4617(a)(2).

24.     In its capacity as Conservator, FHFA has broad authority to act in the interest of and on behalf of the Enterprises.  FHFA, as Conservator, is the successor to "all rights, titles, powers, and privileges of the [Enterprises]."  *Id.* § 4617(b)(2)(A).  HERA empowers the Conservator to preserve and conserve the assets and property of the Enterprises.  *Id.* § 4617(b)(2)(B)(iv).  Congress further authorized the Conservator to exercise any "incidental powers as shall be necessary to carry out" the above powers and authorities, and to "take any action authorized by this section, which the Agency determines is in the best interest of the [Enterprises] or the Agency."  *Id.* § 4617(b)(2)(J).  Among the core functions of the FHFA as regulator and Conservator is to exercise its judgment to ensure the safe and sound operation of the Enterprises and to preserve and conserve their assets, including the collateral that secures their credit exposures.

25.     The United States Treasury Department and the Conservator, acting on behalf of the Enterprises, have entered into preferred stock purchase agreements pursuant to which Treasury provides funding, under certain conditions, to eliminate deficits in each Enterprise's net worth.  Once pending infusions to cover the Enterprises' net worth deficits at the close of the third quarter of 2011 are completed, the aggregate funding from Treasury will be $111.6 billion for Fannie Mae and $72.2 billion for Freddie Mac pursuant to the stock purchase agreements.  In substance, U.S. taxpayers are funding the Enterprises' losses, which will be exacerbated if the Enterprises are required to submit to the Ordinance's registration fee and other numerous burdensome obligations.

## THE ENTITIES' OPERATIONS AS SUPERVISED BY FHFA

26.     In April 2011, the FHFA issued a directive to the Enterprises to implement consistent mortgage loan servicing and delinquency management requirements.

27. Under the supervision of FHFA, the Enterprises contract with servicers who perform activities such as collecting and delivering principal and interest payments, administering escrow accounts, monitoring and reporting delinquencies, performing default prevention activities, evaluating transfers of ownership interests, responding to requests for partial releases of security, and handling proceeds from casualty and condemnation losses.

28. Each Enterprise contracts with numerous servicers. The Enterprise-servicer relationship is governed by agreements, including each Enterprise's Selling and Servicing Guides, which set forth obligations and responsibilities that servicers must comply with as part of their relationship with each Enterprise. These guide requirements may be altered by the Enterprises on their own initiative or at the direction of the Conservator.

29. For example, the Fannie Mae Servicing Guide requires servicers to conduct inspections of properties which secure delinquent mortgages. Those requirements are contained in Announcement 2011-08-R, *available at* https://www.efanniemae.com/sf/guides/ssg/annltrs/pdf/2011/svc1108.pdf) (*See* pages 4-5 of announcement). Fannie Mae generally requires that servicers order property inspections by the 45th day of delinquency and complete them no later than the 60th day of delinquency unless contact has been made with the borrower or a full payment has been received within the last 30 days. Servicers must continue the inspections every 30 days as long as the mortgage remains 45 or more days delinquent, although more frequent inspections are required when specific circumstances warrant. Properties must be inspected every 30 days so long as the related mortgages remain 45 or more days delinquent regardless of any contact with the borrower. The Freddie Mac Servicing Guide imposes the same requirements. *See* Freddie Mac Servicing Guide § 65.33, available at http://www.freddiemac.com/singlefamily/.

30.    As of October 2011, Fannie Mae owns approximately 156,000 loans that are secured by properties located in the 92 zip codes comprising the City of Chicago.  Fannie Mae uses more than 200 servicers in connection with those loans.

31.    As of October 2011, Freddie Mac owns approximately 102,000 loans that are secured by properties located in the 92 zip codes comprising the City of Chicago.  Freddie Mac uses approximately 200 servicers in connection with those loans.

**FHFA AS CONSERVATOR IS EXEMPT FROM SUPERVISION BY A STATE OR AGENCY**

32.    HERA preempts state legislation that has the effect of subjecting FHFA to regulation or supervision by another agency while the Enterprises are in conservatorship.

33.    "When acting as conservator or receiver, the Agency shall not be subject to the direction or supervision of any other agency of the United States or any State in the exercise of the rights, powers, and privileges of the Agency."  12 U.S.C. § 4617(a)(7).

34.    FHFA is acting as Conservator to the Enterprises.

35.    The exercise of discretion to make repairs and otherwise secure and maintain a property is part of the Enterprises' operations.

36.    The Conservator has succeeded to all rights, titles, powers, and privileges of the Enterprises.  12 U.S.C. § 4617(b)(2)(A).

37.    Furthermore, the Conservator is empowered to "take over the assets of and operate the regulated entity" so as to "preserve and conserve the assets and property of the [Enterprises]."  12 U.S.C. § 4617(b)(2)(B).

38.    The exercise of discretion to make repairs and otherwise secure and maintain a property is within the Conservator's rights, powers, and functions.

## THE ORDINANCE IMPERMISSIBLY SUBJECTS THE FHFA AS CONSERVATOR TO AGENCY SUPERVISION

39.     By mandating that the Conservator register with the City and subject itself to extensive obligations backed by onerous financial penalties, the Ordinance would subject the FHFA, as a federal agency and as Conservator, to "direction or supervision of [another] agency," namely the Chicago Department of Buildings.

40.     The Ordinance is thus preempted by federal law because the Conservator may not be subjected to the direction or supervision of the Chicago Department of Buildings.

## FANNIE MAE AND FREDDIE MAC ARE EXEMPT FROM SUPERVISION OR REGULATION BY A STATE OR AGENCY

41.     The Housing and Economic Recovery Act established FHFA to regulate the Enterprises.  12 U.S.C. § 4511.

42.     Congress made FHFA the exclusive regulatory authority overseeing the Enterprises.

43.     The Enterprises are "subject to the supervision and regulation of the [FHFA]." 12 U.S.C. § 4511(b)(1).

44.     The Director of FHFA has "general regulatory authority over each regulated entity," including the Enterprises.  *Id.* § 4511(b)(2).

45.     In creating Fannie Mae and Freddie Mac, Congress explicitly identified their public missions, which include "provid[ing] stability in the secondary market for residential mortgages," and "promot[ing] access to mortgage credit throughout the Nation (including central cities, rural areas, and underserved areas)."  Federal Housing Enterprises Financial Safety and Soundness Act of 1992, Pub. L. 102-550 § 1382(a), 106 Stat. 4002 (1992).

46.     FHFA's exclusive supervision and regulation of the Enterprises is intended to further the Enterprises' public missions by, among other things, promoting the safe and sound operation of the Enterprises.

47.     The Enterprises are thus exempt from supervision or regulation by a state or agency other than FHFA.

## THE ORDINANCE IMPERMISSIBLY SUBJECTS THE ENTERPRISES TO SUPERVISION BY AN AGENCY OTHER THAN FHFA

48.     The Ordinance applies to mortgagees of a property, defined to include "the holder of an indebtedness or obligee of a non monetary obligation secured by a mortgage or any person designated or authorized to act on behalf of such holder."  Chicago, IL, Code § 13-12-126(e)(3).

49.     The Ordinance requires the Enterprises to file a "registration statement" and pay a registration fee for any vacant property thirty days after a property becomes vacant or sixty days after a default on a mortgage, whichever is later.  Chicago, IL, Code § 13-12-126(a)(1) (2011). The mortgagee must renew the registration each six months thereafter while a property remains vacant.  *Id.*

50.     Beginning 45 days after a default, the Ordinance requires that a mortgagee determine, on a monthly basis, if the building on the real estate subject to its mortgage is vacant. Chicago, IL, Code § 13-12-127(b) (2011).

51.     Typically, the mortgagees and their servicers are permitted under certain circumstances, but are not required, to enter an abandoned property to make repairs and prevent waste.  Servicing guidelines between the Enterprises and their servicers, which may be modified by the Enterprises, set the Enterprises' -- and in these circumstances, the Conservator's -- expectations of what is appropriate, particularly where taxpayer funds support Enterprise operations.

52.     The Enterprises and the servicers acting on their behalf consider a number of factors when determining whether to exercise the right to enter and repair abandoned property, including the cost of repairs and the estimated impact on the property's value as security for the loan.  The exercise of this judgment by the Conservator and the Enterprises is central to their effort to determine the most appropriate way to preserve and conserve the value of collateral securing the Enterprises' credit exposures.

53.     The decision whether or not to make such repairs is an exercise of the Enterprises' discretion as regulated entities under the supervision of FHFA.  The Ordinance overrides this discretion in a number of ways.  For example, the Ordinance requires the use of steel plating over windows, which is much more expensive than the construction materials ordinarily relied upon by the Enterprises and their servicers.  Also, the Ordinance imposes more burdensome lawn care practices than those ordinarily utilized by the Enterprises and their servicers.

54.     Notwithstanding the Enterprises' discretion, the Ordinance subjects the Enterprises to a registration and regulatory scheme for vacant properties implemented under the supervision of the Chicago Department of Buildings.

55.     The Ordinance compels the Enterprises -- as mortgagees of properties that have not been foreclosed upon -- to step into the shoes of the building owner to determine whether a property is vacant or intended to be vacant (without sufficient protection from liability for such a decision) and to make repairs deemed necessary by the Department of Buildings through the imposition of escalating penalties and fines, and restricts the discretion of the Enterprises as regulated entities to exercise their rights as mortgagees in a commercially sound and reasonable manner.

56.     The Ordinance empowers the Chicago Department of Buildings to issue regulations interpreting the Ordinance, including regulations detailing the materials and methods the Enterprises must use when erecting signs or protective barriers, and thus to impose further obligations upon the Enterprises beyond those in the Ordinance as adopted.

57.     The Ordinance empowers the Chicago Department of Buildings to conduct inspections and assess fines against the Enterprises for failure to comply with the Department's requirements.

58.     The Ordinance thus subjects the Enterprises to supervision by a regulator other than FHFA, namely the Chicago Department of Buildings.

59.     Supervision and regulation of the Enterprises by state or federal agencies other than FHFA directly conflicts with the directive under 12 U.S.C. § 4511 that the Enterprises are "subject to the supervision and regulation of the Agency," and that the Director of FHFA has "general regulatory authority over each regulated entity."

60.     Furthermore, the Ordinance increases the costs and burdens associated with holding loans secured by property located in Chicago.

61.     A state law, whether arising from statute or common law, is preempted if it creates an obstacle to the accomplishment and execution of the full and explicit purposes of Congress, as is the case here.

62.     The Ordinance stands as an "obstacle to the accomplishment and execution of the full purposes of Congress" because it: (a) subjects the Conservator and the Enterprises to supervision by an agency other than FHFA; (b) impairs FHFA's ability to ensure uniformity and consistency of loan servicing throughout the country; and (c) creates a significant disincentive and additional cost for the Enterprises to purchase mortgages on property located in Chicago,

which could adversely impact Chicago residents' access to mortgages, thereby altering the

Chicago mortgage market with ramification for the stability of the broader nationwide secondary

mortgage market.

63.     The Ordinance is thus preempted by federal law.

**THE CONSERVATOR, FANNIE MAE AND FREDDIE MAC ARE STATUTORILY EXEMPT FROM STATE AND LOCAL TAXATION, FINES, AND PENALTIES**

64.     Fannie Mae's and Freddie Mac's corporate existences derive from their

Congressional charters that establish them as government-sponsored enterprises imbued with

federally-established missions and a number of obligations and privileges in furtherance of those

missions.  Among these privileges are the express exemptions from state and local taxation

except for *ad valorem* taxes on the real property that they own.  Fannie Mae's charter provides:

> The corporation, including its franchise, capital, reserves, surplus, mortgages or
> other security holdings, and income, shall be exempt from all taxation now or
> hereafter imposed by any State, territory, possession, Commonwealth, or
> dependency of the United States, or by the District of Columbia, or by any
> county, municipality, or local taxing authority, except that any real property of the
> corporation shall be subject to State, territorial, county, municipal, or local
> taxation to the same extent as other real property is taxed.

12 U.S.C. § 1723a(c)(2).  Freddie Mac's charter is nearly identical:

> The Corporation, including its franchise, activities, capital, reserves, surplus, and
> income, shall be exempt from all taxation now or hereafter imposed by . . . any
> State, county, municipality, or local taxing authority, except that any real property
> of the Corporation shall be subject to State, territorial, county, municipal, or local
> taxation to the same extent according to its value as other real property is taxed.

12 U.S.C. § 1452(e).

65.     FHFA, including in its capacity as Conservator, is immune from all penalties and

fines.  HERA provides that the Conservator:

> [S]hall not be liable for any amounts in the nature of penalties or fines,
> including those arising from the failure of any person to pay any real
> property, personal property, probate, or recording tax or any recording or
> filing fees when due.

12 U.S.C. § 4617(j)(4). By HERA's express terms, this exemption from penalties and fines applies to the property and business of the Conservatorship, which includes the property and business of Fannie Mae and Freddie Mac to which the Conservator has succeeded as a matter of law. *Id.* § 4617(b)(2)(A). "[W]hile under conservatorship with the FHFA, Fannie Mae is statutorily exempt from taxes, penalties, and fines to the same extent that the FHFA is." *Nevada v. Countrywide Home Loans Servicing, LP*, 2011 WL 4356507, at *5 (D. Nev. Sept. 16, 2011).

66.     Under the Supremacy Clause of the U.S. Constitution, the federal statutory exemptions granted the Enterprises and the Conservator supersede any conflicting local law and bar the registration and regulatory scheme the Ordinance creates. U.S. Const. art. VI, cl. 2.

**THE ORDINANCE IMPERMISSIBLY IMPOSES TAXES, FINES, AND PENALTIES**

67.     The Ordinance compels the Conservator and the Enterprises -- as mortgagees -- to file a registration statement and pay a registration fee for any vacant property within the later of thirty days after a property becomes vacant or sixty days after a default on a mortgage. Chicago, IL, Code § 13-12-126(a)(1) (2011). The Conservator and the Enterprises must renew the registration each six months thereafter while a property remains vacant. *Id*. § 13-12-126(a)(1).

68.     The Ordinance does not state where the amounts collected as registration fees are allocated.

69.     The Ordinance provides that if the City of Chicago determines that the Conservator or the Enterprises violated any provision of the Ordinance, they shall be fined up to $1,000.00 per day for each offense. *Id*. § 13-12-126(c).

70.     The registration fee imposes an impermissible tax on the Conservator and the Enterprises. The Ordinance does not confer any benefit on the Conservator or the Enterprises in exchange for the fee. Further, the fee is not a reasonable estimate of the cost imposed by the

Conservator or the Enterprises upon the City for use of a City service; rather, the fee will be used to generate revenues that the City can use to offset unrelated costs or confer unrelated benefits.

71.     The fines imposed by the Ordinance also violate the Conservator's statutory immunity from penalties and fines.

## PLAINTIFF'S INJURY AND STANDING

72.     Upon FHFA's appointment as Conservator, FHFA immediately succeeded by operation of law to, *inter alia*, all rights, titles, powers, and privileges of the Enterprises. 12 U.S.C. § 4617(b)(2)(A).

73.     In its capacity as Conservator of the Enterprises, FHFA is empowered to operate the Enterprises, to conduct all business of the Enterprises, to collect all obligations and monies due to the Enterprises, to perform all functions of the Enterprises that are consistent with the appointment of a conservator, and to preserve and conserve the assets and property of the Enterprises.  12 U.S.C. § 4617(b)(2)(B).

74.     In this capacity, FHFA has the authority to exercise all rights and remedies of the Enterprises, including but not limited to, the authority to bring suits on behalf of and/or for the benefit of the Enterprises.  12 U.S.C. § 4617(b)(2).

75.     The Ordinance injures the Conservator and the Enterprises by, among other things: (a) requiring the Conservator, the Enterprises and those acting on their behalf to pay registration fees that are in fact local taxes; (b) requiring the Conservator to pay penalties and fines; (c) requiring the Conservator or the Enterprises to take actions with respect to vacant properties that are inconsistent with their exercise of discretion as mortgagees, including with respect to their core judgments about how best to protect the collateral securing their credit exposures; (d) requiring the Conservator or the Enterprises to investigate and determine the

-18-

occupancy status of Chicago properties that they do not own; and (e) subjecting the Conservator or the Enterprises to direction and supervision of an agency other than FHFA.

76. The Ordinance directly causes these injuries by imposing affirmative duties on the Enterprises and the Conservator as mortgagees and obligees, and those acting on their behalf.

77. The Ordinance directly causes these injuries through, among other things, its registration, inspection, and enforcement provisions, which call for large daily penalties.

78. A favorable ruling on any of the Claims for Relief will redress these injuries by prohibiting enforcement of the Ordinance.

## CLAIMS FOR RELIEF

## COUNT I

**DECLARATORY AND INJUNCTIVE RELIEF — THE ORDINANCE VIOLATES THE CONSERVATOR'S STATUTORY EXEMPTION FROM SUPERVISION AND DIRECTION BY ANY ENTITY**

79. Plaintiff reasserts and incorporates herein by reference the allegations contained in paragraphs 1-78 above, as though fully set forth herein.

80. The Ordinance subjects the Conservator to supervision and direction by another agency in violation of federal law.  12 U.S.C. § 4617(a)(7).

81. The Ordinance has caused, and threatens to cause, injury for which Plaintiff has no adequate remedy at law.

82. Plaintiff is entitled to a declaratory judgment that it is exempt from supervision, direction, or regulation by another agency, and an injunction against enforcement of the Ordinance against the Conservator, the Enterprises, and those acting on their behalf.

## COUNT II

### DECLARATORY AND INJUNCTIVE RELIEF — THE ORDINANCE VIOLATES THE ENTERPRISES' STATUTORY EXEMPTIONS FROM SUPERVISION AND REGULATION BY ANY AGENCY

83.     Plaintiff reasserts and incorporates herein by reference the allegations contained in paragraphs 1-78 above, as though fully set forth herein.

84.     The Ordinance subjects the Enterprises to supervision and direction by an agency other than FHFA, in violation of federal law.  12 U.S.C. § 4511(b)(1).

85.     The Ordinance has caused, and threatens to cause, injury for which Plaintiff has no adequate remedy at law.

86.     Plaintiff is entitled to a declaratory judgment that the Enterprises are exempt from supervision, direction, or regulation by another agency, and an injunction against enforcement of the Ordinance against the Enterprises or those acting on their behalf.

## COUNT III

### DECLARATORY AND INJUNCTIVE RELIEF — THE ORDINANCE VIOLATES THE CONSERVATOR'S AND ENTERPRISES' STATUTORY EXEMPTIONS FROM STATE AND LOCAL TAXES

87.     Plaintiff reasserts and incorporates herein by reference the allegations contained in paragraphs 1-78 above, as though fully set forth herein.

88.     The Ordinance violates the Enterprises' and the Conservator's statutory immunity from state and local taxes, save *ad valorem* taxes on real property.

89.     The Ordinance has caused, and threatens to cause, injury for which Plaintiff has no adequate remedy at law.

90.     Plaintiff is entitled to (i) a declaratory judgment that the Conservator's and the Enterprises' statutory immunity from state and local taxes applies and exempts them from the

Ordinance, and (ii) an injunction against enforcement of the Ordinance against the Conservator, the Enterprises, and those acting on their behalf.

## COUNT IV

### DECLARATORY AND INJUNCTIVE RELIEF — THE ORDINANCE VIOLATES THE CONSERVATOR'S STATUTORY EXEMPTIONS FROM PENALTIES AND FINES

91.     Plaintiff reasserts and incorporates herein by reference the allegations contained in paragraphs 1-78 above, as though fully set forth herein.

92.     The Ordinance violates the Conservator's statutory immunity from penalties and fines.

93.     The Ordinance has caused, and threatens to cause, injury for which Plaintiff has no adequate remedy at law.

94.     Plaintiff is entitled to a declaratory judgment that its statutory immunity from penalties and fines applies and exempts it from the Ordinance, and an injunction against enforcement of the Ordinance against the Conservator and those acting on its behalf.

## COUNT V

### MONETARY DAMAGES—REFUND FOR AMOUNTS UNLAWFULLY COLLECTED

95.     Plaintiff reasserts and incorporates herein by reference the allegations contained in paragraphs 1-78 above, as though fully set forth herein.

96.     Defendant's collection of monies pursuant to the Ordinance from the Conservator, the Enterprises, and those acting on their behalf has unlawfully deprived the Conservator and the Enterprises of monetary assets and unjustly enriched the City of Chicago.

97.     Plaintiff is entitled to the immediate refund of all amounts paid, and reimbursement of costs incurred, under or as a result of the Ordinance, plus interest.

WHEREFORE, Plaintiff requests that this Court enter an order:

(a)     Declaring the Conservator, Fannie Mae, and Freddie Mac statutorily immune from the Ordinance as it applies to mortgagees or obligees, and enjoining enforcement of the Ordinance against the Conservator, Fannie Mae, Freddie Mac, and those acting on their behalf, in their capacity as mortgagees or obligees;

(b)     Granting the Conservator refunds of all monies that the Conservator or the Enterprises have paid as mortgagees or obligees under the Ordinance, and reimbursement of costs incurred as mortgagees or obligees as a result of the Ordinance, plus interest;

(c)     Granting the Conservator such other relief as this Court deems just and proper.

Dated:    December 12, 2011                    Respectfully submitted,


                                               /s/ Anthony C. Valiulis

                                               Attorneys for Plaintiff

                                               Anthony C. Valiulis (ARDC No. 2883007)
                                               Robert J. Emanuel (ARDC No. 6229212)
                                               Much Shelist Denenberg
                                                  Ament & Rubenstein, P.C.
                                               191 N. Wacker Drive, Suite 1800
                                               Chicago, IL  60606
                                               Telephone: (312) 521-2000
                                               Email:  avaliulis@muchshelist.com
                                               Email:  remanuel@muchshelist.com

                                               Howard N. Cayne
                                               Asim Varma
                                               David B. Bergman
                                               ARNOLD & PORTER LLP
                                               555 Twelfth Street, NW, Rm.
                                               Washington, D.C.  20004
                                               Telephone: (202) 942-5000
                                               Email:  howard.cayne@aporter.com
                                                       asim.varma@aporter.com
                                                       david.bergman@aporter.com

                                               (Pro Hac Vice Applications to be filed)

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I, Alfred M. Pollard, declare the following:

I am the General Counsel of the Federal Housing Finance Authority ("FHFA"), the named Plaintiff in the above-mentioned case.  I have read the foregoing Verified Complaint and state under penalty of perjury that the Verified Complaint is true and correct to the best of my knowledge.


Dated this _12th_ day of December 2011

Alfred M. Pollard
General Counsel
Federal Housing Finance Agency
Fourth Floor
1700 G Street, NW
Washington, DC 20552